IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MANUEL ENRIQUE CAMACHO                                      PETITIONER

V.                               CASE NO. 5:12-CV-5069

WENDY KELLEY, Director
Arkansas Department of Correction                             RESPONDENT

## OPINION AND ORDER

Currently before the Court is Petitioner Manuel Enrique Camacho's Objections to the Magistrate Judge's Report and Recommendation (Doc. 97), filed on December 16, 2016. Camacho filed his Petition for Writ of Habeas Corpus (Doc. 1) in this Court on April 13, 2012. The Report and Recommendation ("R&R") (Doc. 96) filed by United States Magistrate Judge James R. Marschewski on November 29, 2016, advises the Court to dismiss Camacho's Petition. For the reasons stated herein, the Court **ADOPTS** the R&R and **DISMISSES** Camacho's 28 U.S.C. § 2254 Petition.

## I. BACKGROUND

Though the R&R sets forth this case's factual and procedural history, a brief recounting is useful to frame the Court's analysis herein. Camacho pleaded guilty in Benton County Circuit Court to capital murder on July 11, 2008. In October of that year, Camacho began pursuing post-conviction relief in state court in accordance with Arkansas Rule of Criminal Procedure 37. After the Arkansas Supreme Court denied his requested relief, Camacho filed the instant Petition pursuant to 28 U.S.C. § 2254. On November 6, 2013, this Court dismissed the Petition as having been untimely filed. The

Eighth Circuit then reversed on appeal, vacated the Court's dismissal, and entered judgment remanding the case for further proceedings. (Doc. 34). After the Government filed, and the Supreme Court denied, a petition for writ of certiorari, Magistrate Judge Marschewski set the matter for an evidentiary hearing on April 19, 2016. For reasons not germane to this Opinion, the evidentiary hearing was delayed until November 8, 2016. At the hearing, Magistrate Judge Marschewski took testimony from Dr. Pablo Stewart, who conducted a mental health evaluation on Camacho for use in the underlying state proceedings; Judge Tom J. Keith, who presided over those proceedings; and attorneys Tim Buckley and Kent McLemore, who were Camacho's attorneys throughout those proceedings.

Magistrate Judge Marschewski then issued his R&R on November 29, 2016. The R&R summarizes Camacho's claims as follows, before addressing each in turn:

1. His guilty plea was coerced;

2. His trial counsel was ineffective by:

   a. failing to provide an interpreter at each court proceeding and during discussions with him,

   b. failing to ensure that mental-health evaluations were completed prior to the entry of a guilty plea to determine competency to stand trial,

   c. inducing him to enter a guilty plea,

   d. failing to conduct an adequate pre-trial investigation, and

   e. failing to move to dismiss the charges on speedy-trial grounds;

3. He was actually and constructively denied counsel due to a delay in consular notification; and

> 4. The State engaged in prosecutorial misconduct by failing to disclose to the defense until jury selection had begun the fact that a gun had been located in a bag in the victim's car.

(Doc. 96, p. 2 (emphases removed and formatting altered)). The R&R found that Camacho's attorneys rendered effective assistance; rejecting his contentions that they failed to determine his competency, that he needed an interpreter, that they coerced his guilty plea, and that they failed to conduct an adequate investigation. The R&R also found no merit in Camacho's prosecutorial misconduct claim, and noted that he conceded his speedy trial and consular notification claims. Camacho's Objections to the R&R further concede that his prosecutorial misconduct claim and his allegations regarding his attorneys' failure to provide an interpreter are without merit. (Doc. 97, p. 6).

Camacho does object, however, to the R&R's findings respecting his competency at the time of his guilty plea, and about his attorneys' failure to conduct an adequate pre-trial investigation. The Court has conducted a *de novo* review of the record, including the transcript of the evidentiary hearing, 28 U.S.C. § 636(b), and finds no fault with Magistrate Judge Marschewski's determinations. The Court will nonetheless write on to address some additional aspects of Camacho's competence claim.

## II. DISCUSSION

The R&R discusses Camacho's competence only in terms of whether his counsel was ineffective in failing to fully develop the evidence on Camacho's mental health issues prior to his guilty plea. Camacho's Petition, however, also suggests that he did not make

a knowing and voluntary decision to enter a guilty plea, in large part because of his mental health issues. *See* Doc. 1, p. 21.[1] This assertion warrants some brief discussion.

For a defendant's guilty plea to be constitutionally valid, "not only must he have been competent to stand trial, but his waiver of . . . the right to stand trial must have been 'knowing and voluntary.'" *Hunter v. Bowersox*, 172 F.3d 1016, 1022 (8th Cir. 1999) (quoting *Godinez v. Moran,* 509 U.S. 389, 400 (1993)). A defendant is competent to stand trial when he has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *see also Lyons v. Luebbers*, 403 F.3d 585, 592-93 (8th Cir. 2005) (quoting *Drope* and reciting the legal standard for competence). A defendant is presumed competent, and "a finding of competence, once made, continues to be presumptively correct until some good reason to doubt it is presented." *James v. State of Iowa*, 100 F.3d 586, 589 (8th Cir. 1996) (quoting *Garrett v. Groose*, 99 F.3d 283, 286 (8th Cir. 1996)). A guilty plea is not "knowing and voluntary" when it does not constitute "a voluntary and intelligent choice among the alternative courses of action." *Weisberg v. State of Minn.*, 29 F.3d 1271, 1278 (8th Cir. 1994) (quotation omitted).

Having reviewed the record *de novo*, the Court is confident that Camacho was competent at the time of his guilty plea. First, even a cursory analysis of Camacho's plea hearing transcript reveals several indicia of competence. Camacho was able to state his full name and age, (Doc. 11-4, p. 2), positively indicate his intent to plead guilty to the

---

[1] The structure of Camacho's Petition makes it somewhat unclear whether his contention is that his attorneys' failure to fully develop evidence regarding his mental health issues made his plea not knowing and voluntary, or whether his mental health issues by their own force made his plea not knowing and voluntary, or both. For purposes of this Opinion, the Court will read Camacho's Petition broadly and assume it raises both issues.

4

charges against him, *id.*, and affirm that he understood his trial rights, *id.* at 3. Camacho then proceeded to interact with Judge Keith throughout the judge's colloquy, without incident, before expressing his guilt. *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) ("[T]he defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." (quotation omitted)). In accordance with his plea, the prosecutor sought the court's permission to waive the death penalty, leaving life without parole as Camacho's only possible sentence. *See* Ark. Code Ann. § 5-10-101(c)(1)(A). When Judge Keith asked Camacho whether he understood the prosecutor's recommendation—i.e. whether he understood that his sentence would be life without parole—the plea transcript indicates that Camacho was weeping. This display of emotion additionally suggests that Camacho was sufficiently competent to understand the consequences of his guilty plea.

Camacho then made a statement before Judge Keith formally pronounced sentence. He wept throughout his statement, and was able to articulate feelings of remorse with at least some level of sophistication. *See* Doc. 11-4, p. 12. Then, Camacho spoke to his family in Spanish, and at Judge Keith's request translated the statement into English for the record. As translated, Camacho apologized to his family, and notably told them that "even though [he was] going to prison for life," he'd always love them. *Id.* at 13. Camacho's speech to his family evinces not only the aptitude to translate from Spanish to English, but also an understanding of the sentence his guilty plea would result in.

Second, Camacho's attorneys expressed no concern that he was anything less than fully competent. *See Medina v. California*, 505 U.S. 437, 450 (1992) (acknowledging that "defense counsel will often have the best-informed view of the defendant's ability to

5

participate in his defense"). At Judge Marschewski's evidentiary hearing, Tim Buckley testified that he met with Camacho 25 or 26 times for an approximate total of 50 hours. (Doc. 98, p. 91). During these meetings, Buckley observed that Camacho "spoke English well and seemed to understand everything we talked about." *Id.* at 93. When they discussed the possibility of a plea, Camacho "asked all the appropriate questions," and in Buckley's opinion Camacho "understood what a plea was and what plea[d]ing to the charges [against him] meant." *Id.* at 96. Camacho also appeared to understand the concept of a general denial defense, per Buckley. *Id.* at 97. In sum, Buckley had "no reason to think that [Camacho] had a mental disease or defect." *Id.* at 98.

Kent McLemore echoed his partner's testimony. McLemore met with Camacho on 18 or 19 occasions, and "never had any other impression but the fact that [Camacho] was concerned with his case, appropriately so." *Id.* at 155. Camacho "asked appropriate questions," and expressed "frustration about not having an offer [for a plea agreement]." *Id.* McLemore and Buckley "talked to [Camacho] about what defenses might be available, and he participated in [the] discussions," and "asked questions." *Id.* at 155-56. They never had any concerns about his competency. *Id.* at 156. He "understood who we were, who the judge was, who the prosecutor was. He understood what the evidence was. He understood what the elements of the offenses were, what defenses might be available." *Id.* There was "simply no reason to be concerned about competency in his case." *Id.*

Third, the Court has reviewed video of law enforcement's interrogation of Camacho at the time of his arrest. *See* Doc. 57 (notice of conventional filing). Camacho displayed no signs of the type of incompetence that would render a defendant unfit to stand trial, and appeared fully aware of his circumstances throughout the interrogation. There is no

6

evidence to suggest that Camacho's mental abilities deteriorated between the time of his arrest and his plea hearing.

Camacho points to two documents in the record as evincing that he was incompetent at the time of his plea, or at least that a substantial doubt about his competence existed such that the proceedings should have been halted until his competence could be determined. *See Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001) ("Counsel's failure to request a competency hearing was objectively unreasonable if evidence raised substantial doubt about [his client's] mental competence to stand trial."); *Griffin v. Lockhart*, 935 F.2d 926, 929 (8th Cir. 1991) ("[D]ue process requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial."). Both documents fail to serve Camacho's purpose.

The first is an order from Judge Keith, entered June 6, 2008, directing that Camacho undergo a mental health examination at a state hospital. (R. 598).[2] One of the objectives of the examination listed on the order was "to determine [Camacho's] capacity to understand the proceedings against him and to assist effectively in his own defense." *Id.* Camacho believes this order shows that Judge Keith was concerned about his competence, and that the ordered examination should have been performed prior to his plea hearing.[3] The Court disagrees.

---

[2] The complete record of Camacho's case appears on a disc filed conventionally with the Clerk's Office.

[3] The ordered examination was never performed.

7

Despite including the above objective in the scope of the ordered examination, it is clear to the Court that Judge Keith was not concerned about Camacho's competency to stand trial. Judge Keith testified that the order was likely "a standard Order that I use in those cases." (Doc. 98, p. 84). In other words, it was a boilerplate order. The context for Judge Keith's decision to enter the order, moreover, was completely unrelated to any questions about Camacho's fitness to stand trial. Buckley and McLemore had hired Dr. Pablo Stewart to perform a mental health examination on Camacho. At a hearing just prior to trial, Mr. Buckley announced that they planned to use Dr. Stewart's report for mitigation purposes at the sentencing stage of the trial proceedings. See Doc. 68-1, pp. 5-6. Based on this representation, the prosecutor argued that the state was entitled to have Camacho undergo a mental examination at a state hospital so that it could have a psychological expert to rebut Dr. Stewart. *Id.* at 5. Judge Keith agreed, and entered the aforementioned order accordingly. The first numbered paragraph of that order, in fact, explicitly states that "[t]he defense has put the State on notice that it may call certain mental health experts at trial of the Defendant's case; therefore, the State is entitled to have the Defendant examined by the Arkansas State Hospital." (R. 598). Judge Keith's order was to ensure that the state could put a mental health expert on the stand during the sentencing phase of Camacho's trial, not to ensure that Camacho was competent to stand trial.

The second document is Dr. Stewart's mental examination report. (Doc. 72-5). That report recounts Camacho's indisputably traumatic upbringing in significant detail, and proceeds to diagnose him with Posttraumatic Stress Disorder ("PTSD") and Polysubstance Dependence. Dr. Stewart then concludes that "[t]hese mental conditions

8

contributed to [Camacho] not being able to act 'Knowingly' and 'Purposely' with respect to his conduct at or around the time of his alleged offenses." *Id.* at 23.

Though perhaps not entirely innocuous, Dr. Stewart's report does not show that Camacho was incompetent at the time of his plea hearing, nor does it raise a substantial doubt about his competence. Once again, context matters. Most obviously, Dr. Stewart was not asked to express any opinion on whether Camacho was competent to stand trial, and he expressed no such opinion. *E.g.*, Doc. 98, pp. 20-21. In fact, Dr. Stewart testified that there are "standard tests" for the specific purpose of determining a defendant's fitness to proceed, but that "none of those specific tests were given in this case," either by him or the two other doctors who evaluated Camacho. *Id.* at 34. Dr. Stewart's report must additionally be viewed in light of the two other mental health evaluations performed on Camacho. Most relevantly, those reports concluded that Camacho had an IQ of 91 and 86, respectively. *Id.* at 53-55. And, Dr. Stewart's report must be viewed in light of Judge Keith's, Buckley's, and McLemore's opinions, after observing and interacting with Camacho on many occasions, that he was fully competent. This is especially so given that Dr. Stewart only met with Camacho twice, for a couple of hours, when he "would like to have met with him five times, ten times." *Id.* at 35.

Based on the Court's review of the record, including video of Camacho's interrogation, the transcript of his plea hearing, and the testimony of Judge Keith, Buckley, and McLemore, it cannot conclude that Dr. Stewart's report and Judge Keith's mental examination order create any material doubt as to Camacho's competence to stand trial. *Accord Weisberg*, 29 F.3d at 1276 (finding no reason to doubt a defendant's competence after reviewing the transcript of his plea hearing and considering that neither the judge,

prosecutor, nor defense counsel doubted his competence). Consider, in contrast, *Griffin*, 935 F.2d at 926. Therein, a team of three doctors evaluating the defendant could not determine whether he was competent to proceed, and recommended a second evaluation, *id.* at 930-31; the defendant's attorney expressed concerns about the defendant's competence, *id.* at 931; and the plea hearing transcript revealed "statements by [the defendant] that contribute to a doubt about his competency," *id.* This evidence created "sufficient doubt" about the defendant's competency, making errant the state court's failure to conduct a competency hearing. *Id.* Comparable circumstances are absent in the instant case. The transcript of Camacho's plea hearing provides support for his competence, not his incompetence; his attorneys and the presiding judge all agree that he appeared competent throughout the proceedings; and Dr. Stewart's report, while diagnosing Camacho with PTSD and an addiction disorder, does not opine on his competence to stand trial.

Having determined that Camacho was competent, the Court now finds that Camacho's guilty plea was knowing and voluntary. "The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Porter v. Lockhart*, 925 F.2d 1107, 1110 (8th Cir. 1991) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)) (alteration omitted). The R&R already explains how the actions of Camacho's attorneys could not have rendered his plea unknowing and involuntary, and the Court need not rehash those reasons here. *See* Doc. 96, pp. 13-28 (concluding that Camacho's attorneys were not ineffective for failing to proceed with a competency hearing, request an interpreter, or conduct an adequate pretrial investigation, and that they did not coerce

10

Camacho into pleading guilty). But beyond those matters, the record is replete with evidence that Camacho made an intelligent choice among alternative courses of action that he fully understood.

There are only two possible penalties for capital murder in Arkansas: death, or life without parole. *See* Ark. Code Ann. § 5-10-101(c)(1)(A). According to McLemore, he and Buckley had been seeking a plea deal for Camacho for two years. (Doc. 98, p. 157). During this time, Camacho "expressed frustration about not having an offer." *Id.* at 155. When they finally received a plea deal during the third day of *voir dire* before his trial, McLemore believed that Camacho "understood that he was pleading to [a] life sentence," and "that he was doing that to avoid going to trial and possibly be[ing] sentenced to death." *Id.* at 158-59. During the plea hearing, Camacho affirmed that he was making his decision to plead guilty "voluntarily, on [his] own free will." (Doc. 11-4, p. 4). He affirmed that his attorneys had reviewed the state's evidence with him, explained what the state must prove to obtain a conviction, and discussed his possible penalties upon conviction. *Id.* In the statement he made to his family, Camacho indicated an understanding that he would spend the rest of his life in prison. *Id.* at 13.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Though a defendant's representations at a plea hearing that his plea was being entered knowingly and voluntarily are not "invariably insurmountable" on collateral attack, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* Nothing presented in Camacho's

11

Petition undermines the representations he made while pleading guilty: that the plea was both knowing and voluntary.

One final matter related to Camacho's competency argument is worth addressing. In his Objections to the R&R, Camacho discusses his counsel's alleged ineffectiveness for failure to pursue the affirmative defense of diminished capacity. *See* Doc. 97, pp. 10-12. However, the Court does not read Camacho's Petition to raise this allegation. Rather, the competency-related allegations in his Petition all concern his competency to stand trial, not to commit the underlying offense. The Court's reading appears to be consistent with Camacho's counsel's understanding at the evidentiary hearing. *See* Doc. 98, p. 45 (Camacho's counsel referring to the scope of Dr. Stewart's testimony as being "competency and [ability] to understand the proceedings"); *id.* at 62 (Camacho's counsel not disagreeing with the state's characterization that "[t]he claim is not that counsel is ineffective with respect to any criminal responsibility opinion or defense[,] [i]t's fitness to proceed to trial"); *id.* at 141 (Camacho's counsel raising a relevance objection because the question was not "relevant to [Camacho's] competency to enter a plea, competency to proceed to trial"). But to the extent that Camacho's Petition can be generously read to assert this claim, the Court would deny it out of hand. Camacho's counsel acted well within the bounds of professional reason in deciding to forego the rather weak affirmative defense, and advise their client to accept a plea offer to avoid the prospect of the death penalty. *See Strickland v. Washington*, 466 U.S. 668, 690–91 (1984) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation."); *Forsyth v. Ault*, 537 F.3d 887, 892-94 (8th Cir. 2008) (rejecting a claim that trial counsel was ineffective for failing to reasonably investigate and present insanity and diminished capacity defenses).

In sum, the Court finds Magistrate Judge Marschewski's conclusions to be well founded. It further finds that Camacho was competent to enter a guilty plea, and that his guilty plea was knowing and voluntary. Finally, to the extent that Camacho's Petition can be read to raise an ineffective assistance claim for his counsel's alleged failure to further investigate, or proceed to trial to raise, a diminished capacity defense, the Court rejects that position out of hand.

### III. CONCLUSION

For the reasons stated herein, the Court **ADOPTS** Magistrate Judge Marschewski's R&R (Doc. 96) and **DISMISSES** Camacho's 28 U.S.C. § 2254 Petition (Doc. 1) **WITH PREJUDICE**. The Court also agrees with Magistrate Judge Marschewski's assessment on the appropriateness of a certificate of appealability ("COA"), and will **GRANT** Camacho a COA on the issue of whether his attorneys were ineffective for failing to determine his competency to enter a plea in light of Dr. Stewart's report. Judgment shall enter by separate order.

**IT IS SO ORDERED** on this 16th day of May, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

13